The first case for today is N. Ray Fisher v. Paykel Healthcare Limited, Appeal No. 231558. Mr. Everton, please proceed when you're ready. Good morning. May it please the Court, my name is Ben Everton and I represent Fisher & Paykel Healthcare. I'd like to reserve three minutes for rebuttal. This appeal involves a pioneering patent family from Fisher & Paykel with many embodiments for breathing circuits. These breathing circuits include breathable material that's implemented into the breathing tubes. Before these patents, companies were not making breathing circuits formed of breathable materials. So here, the examiner made rejections that are dealing with non-statutory double-patenting rejections based on Fisher & Paykel's own patent claims. The claims at issue relate to an expiratory tube of a breathing circuit. So this is the tube that goes up. We are familiar with the claims. You can assume that we're familiar with the technology and the claims. If you want to jump right into the merits of the case.  Thank you, Your Honor. And the board committed error for multiple reasons in these. What's the primary, what's your main argument on appeal, sir? So the board committed error by rejecting independent claim one based on double-patenting when that claim, when the prior claim, based only on the prior claim, which says at least a region. In your brief, you talk about domination as a major argument. You talk about the need to modify a claim for reasonable expectation of success, various points. Which point do you want to focus on? The point that I want to focus on is that the examiner provided no evidence or support for saying that it was obvious to modify at least a region to be forming the whole entire wall of the breathable material. Didn't they view that instead, not necessarily as an obviousness argument, but when you say at least a region, that that means it could be as much as the entirety of the length, which then reads on the claim directly. And that which anticipates makes something obvious. Isn't that what the argument was, or what the reasoning of the board was, and what the reasoning of the examiner was? Yes, the board did reason that it was within the range, that there was a range from at least a region all the way up to the entire... Well, at least a region, yeah. I guess it could be a small portion all the way up to the entire amount if it's at least a region. But the board acknowledges that that claim limitation must be modified. It's not an anticipation. As explained by the bill and as explained by the patent office, the modification was to exclude any embodiment that wasn't entirely, leaving the entirely, so what's the harm in that? Well, that's the same... What I'm modifying is looking at the reference and saying, well, you have this at least a region, and almost entirely, and double down all the way down. And so it wasn't amending, it was simply throwing out the embodiments that were less than entirely. That is correct. But that is still an obviousness argument, and that is a... Why is that a prohibitive amendment in a non-statutory double patenting case? Well, the point is that that is still an obviousness modification. And our argument is that there was no support for even that modification of narrowing the claim down to just being made entirely of the breathable material. Well, I don't think you dealt with Judge Stowe's point that she made in terms of talking about the at least a region, and then also the interrelationship between what anticipates and what can be rendered obvious. Can you deal with that directly? Yes, and so that goes to the domination law in the cases that we've cited. So even if the prior claim dominates and includes within its range, or it's kind of like a genus and a species, right? If the previous claim is a genus that includes the species, the case law is clear, and the Board doesn't dispute that that's not anticipational. Didn't FPH forfeit its arguments regarding domination? No, Fisher and Paykel did not forfeit any of those arguments, and those arguments were made in response to arguments in the examiner's answer. When the examiner brought up this argument that it's a range and overlapping ranges in response to that, Fisher and Paykel then introduced the domination arguments. Isn't the fact that it's a range inherent in the at least a region plain language? I mean, why was the answer in the, what the examiner said, why wasn't that simply just an explication of what everybody knew from the get-go? I mean, you say at least a region, you're talking about a range. Right. But the examiner had... Why wouldn't you have known from the get-go, from the examiner's first iteration, that you had a domination argument to mount if you wanted to? Right. Fair enough. And from the get-go, Fisher and Paykel did make arguments, not using the word domination, but did make arguments that this was a range and that the examiner was incorrect. Right, but you didn't complain to the examiner's first office action, hey, you can't do this, that's domination. Correct. Did not use the words domination, but did... You could ask the whole question as long as you forfeited the argument by not having raised it timely. And so this is a, the domination argument is a continuation of arguments in the applicant's appeal brief, and we've cited to those, those are in the appendix at pages 773 through 778, and 776 specifically. I will take a few time to recite for me, one of the things you need to address is the extent to which the board discounted the testimony of your expert, Mr. Eaton. It looked to me like the board pretty much discounted it entirely for a number of reasons. And if it's true that the board discounted Mr. Eaton's testimony, then your whole secondary consideration case drops, I think, because you don't have any evidence. So, I think you should address why Mr. Eaton was incorrect in discounting the testimony of your expert. Correct, and I can address that. So, the board did disregard the testimony of Mr. Eaton. First, the board dismissed his evidence about high costs. Can I be clear? I just want to make sure. The board says we're not inclined to accord it much weight, right? Correct. It's a little different than disregard, right? So, yes, you're correct, Your Honor. Okay, I just want to make sure that I'm not missing something. Okay. How do you treat it? You just said disregard. Do you treat it as having the witness being disregarded? Yes, and our position has been disregarded because there was no evidence on the other side to support the obviousness modification. Why can't the board look at it and say, we don't agree that a person of ordinary skill in the art, under the appropriate case law, would have no experience whatsoever with materials, and then discount the expert's testimony for that reason? The board did do just that. I understand. It doesn't seem unreasonable at all to me. So, I'm just trying to get your response. Because under our case law, a person of ordinary skill in the art should understand the technology that is within the scope of the claims. And here, you know, experience with materials seems pretty significant. Right, and here, the only evidence of what a person of ordinary skill in the art would know or not know coming from a person who has experience as a breathing circuit designer is from Mr. Eaton. Is from what? From Mr. Eaton. Yeah, but Mr. Eaton narrowly defined the knowledge of a person of ordinary skill in the art to not include information about any materials. And now, for the secondary considerations, he's taken the position that a person of ordinary skill in the art wouldn't know how to corrugate a particular material. Well, maybe that's so if a person doesn't have any experience with materials. But it's a difficult position to take and for the board to give credit to when the board says we don't agree with his interpretation of who a POSA is. Now, Mr. Eaton. I just want to hear your response to that. Yes. I'm just letting you know the difficulty I'm having with the position, your position you're taking on appeal. And so I want to make sure I understand your answer to my question is how could the board not give it little weight given the very narrow and incorrect statement of who a person of ordinary skill in the art is?  And our position is that the only support and the only evidence for that level of ordinary skill in the art does come from Mr. Eaton. And he has an extended... Are you making an argument that if there's only one side that provides evidence on a given point that the board has to accept that evidence? No. Okay. The board does not have to accept that evidence. That is correct. But that is our argument that there was no evidence provided by the examiner. There was no support for this modification, the agreed upon modification of the original claim to be entirely of the breathable material. And that the only evidence here is the expert report or the expert declaration of Mr. Eaton. And that he was the only one who provided evidence as to the level of ordinary skill in the art. And that such... What was his evidence? Him as a person, his experience as a person of ordinary skill in the art, as an expert in the field of developing... So his declaration as to who he thinks the person of ordinary skill in the art is, is his evidence? Yes. He doesn't cite to any additional testimony or evidence at all. It's just his... I understand. I'm not trying to undermine. I just wanted to make sure there wasn't something else because you said he's the only one who cited to any evidence. That's correct. He does cite to references within his declaration. For who a person of ordinary skill in the art is? Not necessarily for who the person of ordinary skill in the art is. But that's additional evidence that he did cite in his declaration. I see that I'm about into my rebuttal time. So I'll cede the rest of my time and unless there's any further questions from the... No. Let's hear from the government.  Thank you. Ms. Cruller, when you're ready. Your Honors, and may it please the Court. The Board correctly determined that the tubes of breathable material recited in the pending claims are obvious variants of the already patented tubes of breathable material patented in the Smith patents. Substantial evidence supports the Board's determination that there was a motivation to make a tube of entirely breathable material, there was motivation to corrugate that tube, and there was a reasonable expectation of doing both. In response to some of the questions that were raised in the opening with respect to the argument that there's no evidence, that is incorrect. As the Board stated, you start with the scope of Claim 4 of Smith 366. That is undisputedly a range that includes the entire wall of breathable material. So they've already told you that that's in the scope and that it will work. Now as far as the motivation, it seems like FPH is looking for a teaching or suggestion or a motivation from some other reference. That's simply not required by KSR. And we also have the scope of Claim 4, which your Honors have recognized, gives you the to choose the upper end of that scope. That's established by the Peterson case where the existence of the range itself, one of ordinary skill in the art would have been motivated to optimize and look within those to see what was the most workable. So there's no requirement for an extra... There's no requirement for everybody would have, a person of ordinary skill in the art would have known that it would be most desirable to have it be at the very end of the range. So the presumption of obviousness case law says once you have a range in the prior art, the burden shifts to the applicant to say my range that I'm asking for, the upper end, is critical. It provides unexpected results to rebut that presumption of obviousness. So we have the presumption of obviousness here and it was not rebutted. In addition, the examiner and the board did set forth why you would look for that upper range. They said an entire wall of breathable material would provide the most permeability to water vapor, which was one of the goals of the invention. With respect to not rebutting it, the declaration by Mr. Eaton was correctly found not credible by the board. They go at length to discuss the number of reasons why it's not credible. You mean it was a complete discrediting, not 90% or 80%? The language that the presiding judge pointed to suggests that the board did not completely reject Eaton. Your Honor is correct. They did not completely reject Eaton. How are we supposed to decide how much of Eaton survived and how much didn't? Well, I think the board looked at it correctly because they said even if he is wrong and we don't believe it's credible, we're still giving weight to his argument that this material would be too thin to be self-supporting, and that is Appendix 15 through 16. So they assumed it was weak, despite all the problems with Mr. Eaton's declaration, but they found that one of ordinary skill in the art would still corrugate it. And so the board's decision that one, it was not credible, but still providing the fact that giving it weight, they still proved obviousness, is defensible on both ends. And the lack of abusive discretion here... Giving it full weight or giving it partial weight? They gave it partial weight. I'm trying to get at, that happens when you have an expert and the agency says, well, we don't believe everything he says, but then they don't tell you what it is they do believe or don't believe. How am I supposed to review their decision? So, Your Honor, I do believe they told you exactly what they're assuming is correct, and that's at Appendix 15 to 16. They said, we're going to assume that what he said regarding it being too weak, the believable material being too weak to be self-supporting, we're going to assume that that is correct. So that is the part that they told you exactly where they're giving weight to it. The rest of it, with respect to the reasonable expectation of success, they were very clear that they were not giving him weight, that one of ordinary skill would not have an expectation of success in order to make it, to make an entire wall of reasonable material. And that comes down to... Doesn't part of that rationale come from the Board's use of enablement? I would disagree with the characterization of the Board's use of enablement. I believe... Am I right that part of that whole argument about what you would reasonably expect comes from the fact that there was a prior patent, and the prior patent was understood to reach the entire region, and there was purportedly no enablement problem with the prior patent because it survived? Your Honor... So I can understand that argument, but it struck me that the Board actually had sort of in the back of its mind that there had been an enablement rejection here at one point. They said, we don't think that there was a need to reject this claim on enablement. So I didn't quite understand why the Board was delving as far into enablement as apparently it did. So the Board was responding to Mr. Eaton's statement that one would have no ability to make this absent the teachings of the specification. So they said, okay, there's so many significant obstacles that one of ordinary skill in the art had to overcome absent the teachings of the specification. Let's look to the specification. Where does it tell you how to overcome these obstacles? The examiner said that. The Board said that. Mr. Eaton never told us where in his specification. FPH never told us where in the specification. The opening brief to this Court never told us. So the Board properly said, if it's not in the specification, it must be within the ordinary artisan's skill. And that's why there was no enablement rejection before, because they presumed that the specification did not have enablement rejection. The prior patent did not have an enablement rejection, meaning this must be within the ordinary skill's artisan, meaning there's no lack of reasonable expectation of success for this application and these claims in finding that you would be able to make an entire order. The correctness of that assumption is what leads to enablement cases in the District Courts, right? That assumption is flimsy, if you will, correct? The Board's assumption? You have the assumption that there's no enablement problem unless you've said in your specification, oh my God, there are a lot of problems here in doing this, and here's how you do it. I don't think we do. The real evidence is that at the PTO, if nothing is said in respect about how you make and use, then that means there's no enablement problem. But all these patents that issue may get challenged for enablement, right? I would say the premise of that is that FPH is the one that's arguing it's so difficult. So we don't get to this part, that the examiner said there is enablement. We think it would be within the ordinary skill of the artisan. FPH is the one saying, no, no, no, there's significant obstacles, no one would be able to figure this out. So it's kind of the rabbit hole that they themselves brought themselves into. I disagree that it's kind of one or the other. What is your response to opposing counsel's domination arguments, whether you're responding on forfeiture or on the merits? So with respect to both, I believe they're incorrect. On the merits, domination is a very basic principle that you cannot rely on the fact of a genus alone. You can't say, for example, the Kaplan case said organic solvents. You can't say that covers every organic solvent, boom, done, obvious type double patenting. You need some articulated reasoning, you need to step forth an anticipation argument, an obviousness argument. That's what we have here. The board did not say two, you know, scope of claim four, done, moving on. They said they looked at the claim construction, they said this is the range it teaches, they also had a motivation. So it was a proper, obvious analysis with its self-dispenses with the domination argument. On the forfeiture front, I would say there was no different argument in the examiner's answer. And the runner was all genus claims would fail for domination. Correct, Your Honor. For example, if they had said all tubes, meaning corrugated tubes, and it's obvious type double patenting, that would have been incorrect. Here, they've set forth why it would have been obvious to corrugate. So you can't rely on the fact alone, but that doesn't mean a genus can't anticipate. In the Abbey case, we had a genus anticipate, and they said this is not improper domination because we're saying why the genus anticipates. So it's just the requirement you need some analysis. And they did, I believe, forfeit it. There was nothing new in the examiner's answer, and as the board itself said... Well, it was the first time the examiner, you know, made it talk about the range. When the examiner made its various office actions before the litigation proceeded, only referred to at least a region, and didn't call out that whenever you saw in at least a region, you're talking about a genus. And if you're honest, do you believe that that is the proper way to read the examiner's previous rejections? We think we'd survive on the merits of the lack of domination alone. The previous rejection has to have relied on at least a region teaching the full length, because otherwise the examiner wouldn't have a leg to stand on, right? Correct, Your Honor. So I think the examiner set it forth. He said nothing different in his examiner's answer. Do you have a feeling that the first time a range is mentioned is after, is in response to the examiner? I think the first time the word range is, is the word range is used, in my understanding, is after the examiner's answer, but the word range itself is not the domination argument. So the word range, that's what triggers the domination argument? I think the word at least a region being a key point.  I agree with what I said earlier, why isn't the range necessarily come up when you say at least a region, but you didn't make that argument in your brief. We did not, because we do believe that the merits argument is the stronger argument in response to domination. There is a lot that could be read into back and forth, and so it was a decision not to overly rely on forfeiture before this court, when we felt the answer was... Well, I don't put a headline, it was a lead argument on the question. I apologize, I did not mean that. Well, if you disagree on the merits, we have a secondary forfeiture argument. I apologize if that's the implication that we gave this court, that it was a hierarchy. Well, we may have set it up in your brief. I mean, we understand basically when people have a lead argument in the brief, that's their strongest argument on the point, and the secondary argument was secondary. Your Honor, I apologize if that implied... I was taught to write briefs. I don't know how they teach people at the patent office. To me, it was the fact, as the author of the brief, that it didn't make sense to discuss forfeiture after the merits, since you would not need to get to the merits if there was forfeiture, and that was my decision in writing the brief, but I will take that under advisement in future brief writing, Your Honor. Thank you. As far as my last point, with respect to the person of ordinary skill in the art, there was a lot of discussion about the evidence of person of ordinary skill in the art. We have Mr. Eaton's testimony, but we also have the evidence of the specification itself and the claims of the specification, which are directly the field of technology is breathable materials, and so that is counter-evidence that the knowledge of the person of ordinary skill in the art would include knowledge of breathable materials at a merits. What about the name of the application? Components for breathing surfaces? Correct, Your Honor. A component of a breathing circuit is the breathable material. So our case law says that when you're trying to, when the fact finder is trying to determine who a person of ordinary skill in the art is, that they should do things like look to the specification, look to the title, look to the abstract, look to the claims themselves, to make that determination right? Correct, Your Honor. I'm just confirming that that is the evidence. Yes, that is the evidence. In addition to Mr. Eaton's own testimony, which does spend a considerable amount of time talking about the properties of breathable materials, so I think that also indicates that is the main field of technology in this case. Opposing counsel seem to imply that you almost need an expert on the other side speaking to these issues. Do you want to respond in a way to that argument that I thought I heard opposing counsel make? With respect to the need for an expert, we do have the examiner, which has expertise in this field, but I don't think we need to reach that here because we do have evidence itself, which is not cited by Mr. Eaton. We have the teachings of the specifications. So I don't know if it's a comparison of expert to expert, but certainly underlying support of FPH's expert versus the support of the patent and the specification itself. So I think that's the proper lens at which to look through the person of ordinary skill in the art. Unless Your Honors have any other questions, we ask the Court to affirm the Board's rejection of the claims as obvious type double patenting.  Thank you, counsel. Mr. Everton, you have a little over three minutes. Thank you, Your Honor. So first, on the issue of the timeliness of the domination arguments, just wanted to revisit that. So the domination arguments were a continuation of the arguments in applications or in applicants' appeal brief. I just wanted to go back and look at what exactly did the examiner say in his rejection. So this is in Appendix 610. He said, it would have been obvious to modify the modified patent claim fours to wall to be formed entirely of this permeable material in order to allow for the passage of water vapor out of the tube along any point of the tube's length. So the modification there that he's proposing is to modify the tube so that it would be formed entirely of a permeable material. So that rejection did not have anything about ranges and the ranges hadn't come in yet until in the examiner's answer. He brought up the ranges and that's at Appendix 860 through 861. And then applicants' arguments about domination were in response to the examiner's answer and the new arguments about ranges in his answer. Now, I also want to revisit Mr. Eaton's declaration. We talked about the level of ordinary skill and the attacks on his declaration. But in his declaration, and this is at Appendix 543 through 560, if we go specifically to Appendix 552. 552? Yeah, 552. We see that Mr. Eaton cited two contemporaneous evidence supporting his opinion. This is Paragraph 33? Yes, Paragraph 33. You'll see there the Permapure Patent that discusses napheon and there's an excerpt there that a person of skill would have known that the walls would be too thin if you used this thin permeable material. But you'd have to make those walls much thicker in order to support themselves and to support a tube and by doing so, you would defeat the purpose of the material because it would no longer be permeable enough, no longer be breathable. Then he also cites in Paragraph 34 the painter reference, which discusses these extremely thin and weak film materials. So regardless of the level of ordinary skill in the art and whether or not Mr. Eaton was incorrect in that, there is independent evidence provided by these references about what a person of skill in the art would know at that time. Can I ask you, he also says there's no expectation of success absent the teaching of the specification. What is he referring to by the teaching of the specification? Is it just the hey, that they did it and therefore they were and then they were successful? What do you what do you think he's referring to by that testimony? So there are examples provided of breathable material in these tubes within the specification and we've provided those example embodiments are in Appendix 49 where the entirety of the tube is made of this breathable material. And it did, it did. The patent showed that it could be done. The patent provided examples and told the person of skill in the art that it is possible to make the entire tube wall of a breathable material.  Thank you, Mr. Everton. This will be submitted. Thank you for your argument today. Thank you, Your Honor.